Our final case for argument today is Grotts v. Kilolo Kijakazi. Mr. Butterfield. Good morning. I'm Attorney David Sutterfield. Feel free to take off your mask when you're arguing. It's easier to hear somebody that way. I can see you, then I'm not fogging up my eyes. Thank you. Good morning. I'm Attorney David Sutterfield on behalf of the plaintiff, Margaret Grotts, police court and police counsel. The thing that jumped out at me when I first read the case was it seemed like the administrative law judge had almost found, or was being punitive in finding that Ms. Grotts had started work on December 14, which was the direct result of her having aggressively pursued mental health treatment for the past seven plus years. It didn't make sense when you looked at it. I think what he did is simply patched on to the December 2014 medical medications onto those that were given to her in February of 14. That eliminated 14 despite the fact that she was highly symptomatic that entire year, having lost her medical card, having not been able to take her medications, etc. Start working our way backwards then from that point and we see a plethora of objective findings made by her treating nurse psychiatrist who has given her the psychotropic medications and is conducting MS and mental status exams regularly. Those are showing profound abnormalities, consistent abnormalities, and that is error for the judge to skip those objective findings. To put that into context, when the judge is evaluating cases you have the five-step process. Step three is whether somebody meets a listing. Step three highlights in plaintiff's briefs the requirement that the judge consider mental status exams. Here we have upwards of 35 in the 30s that are completely ignored and not analyzed appropriately. That puts us in a situation where if you're not looking at the objective evidence, how is it that you're going to evaluate the intensity and persistence of her symptoms in terms of her activities of daily living? How is it that you're going to evaluate opinion of this? It's not possible. When you really get down to it, it's not possible to do those things given the nature of the judge's analysis. You have things in there that are glossed over, that are consistent with her functioning. There's the consultative exam that Social Security sent her to, Dr. Klug, in January of 2010, and he's noting poor reasoning, variable memory, immediate memory is poor, sorry, variable immediate memory, poor judgment, poor insight. That's their doctor. Case law establishes their doctor's not going to come in and say something that undermines, that's inconsistent with the ultimate position of the commissioner. There has to be some analysis of that, and there's not. Those are the things that jump out. You also have the fact that you have law of the case, where the district court and the appeals counsel repeatedly say, you're not doing the proper analysis of this individual's activities of daily living. Again, case law is clear, as is, again, the 12.0 listing descriptions in terms of that mental health impairments are varied. Simply because somebody is assessed on a particular day doesn't mean it was one of their better days, or maybe they were seen on a worse day, but there's this global perspective that somebody who treats somebody for, in this instance, six years as Nurse Merrill did, their opinion holds a lot of sway. In this instance, again, we believe that the judge's failure to comply with just basic analysis of the facts in this case undermines his opinion. Any questions? All right, thank you. Ms. Godfrey. Good morning. May it please the court, Counsel Jean Godfrey, on behalf of the Commissioner of Social Security. This court should affirm the ALJ's finding that Ms. Grotz was not disabled during the closed period of disability alleged, from January 2007 through December 2014, when she returned to work full time. The ALJ issued a thorough 39-page decision that appropriately considered the record evidence, which spanned more than 2,400 pages. For this court to remand under the substantial evidence standard, it would have to find that no reasonable mind could have looked at that evidence and reached the same conclusions as the ALJ. Now, while Ms. Grotz disagrees with the ALJ's conclusions, she fails to demonstrate that they were entirely outside the realm of reasonableness. The ALJ credited Ms. Grotz's allegations that her depression caused some functional limitations. He assessed a highly restrictive residual functional capacity that was consistent with and more restrictive than the opinions of four reviewing psychologists. He also cited substantial evidence that her allegations regarding the severity of her depression were unsupported by the record. Now, this court's precedent makes clear that an ALJ's subjective symptom analysis does not have to be flawless or perfect. Under the court's deferential review, a single valid reason can suffice to uphold the ALJ's subjective symptom finding. And the ALJ here provided several valid reasons  Now, as counsel noted, the ALJ found that it was highly probative that Ms. Grotz was able to return to work in late 2014 while experiencing the same symptoms and undergoing the same treatment that she had during the closed period at issue. There was no corresponding improvement in her symptoms documented in the record. Indeed, she testified at the 2019 hearing that she went to work at that time because she had temporarily separated from her husband and she needed to support herself. And that testimony is corroborated by her contemporaneous reports to her therapist in 2014. She told her therapist in August of that year that she had separated from her husband three months prior and she was indeed off of her medications for a month. So at that time, her therapist had to slowly restart her medications, which undermines counsel's argument that there was some documented improvement. Now, in addition, the ALJ noted that the contemporaneous treatment records during the period at issue were inconsistent with her allegations of disabling depression. Now, her therapy assessments during this period consistently rated her functional impairment as only low or moderate. Her psychiatry treatment records almost always described her functioning as fair. Now, the ALJ did acknowledge that there were some abnormal findings on examination, including the findings of consultative examiner Dr. Klug's report, which counsel alleges he overlooked. But it was the ALJ's role to weigh that competing evidence, and he did so here reasonably. Ms. Godfrey, is it true the ALJ gave no weight to the treating opinions? Well, there were a number of treating opinions in the record here. He gave no weight to the combined opinions of the treating nurse, Meryl, treating therapist, Ms. Otto, and treating therapist, Ms. Walker, all of whom opined that Ms. Grotz had marked to extreme limitations and had experienced multiple episodes of decompensation. But there was also another opinion from an advanced practice nurse, Barron, in early 2008, and she opined that Ms. Grotz's depression was well controlled on medication, and the ALJ gave great weight to that opinion. And Ms. Grotz does not challenge the ALJ's weighing of that opinion before this court. So returning to the subjective symptom analysis, the ALJ also noted that her treatment records documented improvement with treatment. As I just noted, we have the opinion of Nurse Barron, and we also had evidence here that even though her symptoms did fluctuate at times, when they increased in severity, she was never psychiatrically hospitalized. And this court recently held in Chambers v. Saul that lack of psychiatric hospitalization when a claimant is alleging an increase in their mental health symptoms is reasonable evidence that an ALJ can consider. The ALJ also found that Ms. Grotz's daily activities undermined her allegations of disabling depression. Despite her allegations, she was able to care for her own two children, both of whom had behavioral issues, with minimal to no help from her husband. Now the ALJ did acknowledge that she reported difficulty and stress managing her children to her therapist. But even so, she testified that she was able to attend school meetings, go to her son's baseball games, go to medical appointments for her children, and take her son to and from school even on her bad days. She told her therapist, indeed, that her strengths were getting up and doing things even when she didn't feel like it, caring for her children and being a good mom. This court has held in Fanta v. Saul and Chambers v. Saul that an ability to care for one's children, despite allegations of disabling mental health symptoms, is again reasonable evidence for an ALJ to consider. In addition to that, she was able to successfully complete a course at a community college to become a certified nurse assistant, which the ALJ reasonably found undermined her allegations of difficulty concentrating and maintaining focus. The ALJ did acknowledge that she failed the state exam, but he also found that she made inconsistent statements regarding why she failed her first CNA course. While she alleged in connection with her disability application that she failed it because she had trouble concentrating due to her depression, she told her therapist at the time that she failed the course the first time because her husband would not help with child care and would not allow her to study. Finally, the ALJ noted that she was able to work part-time during the period at issue, which undermined her allegations of disabling limitations. So I just want to acknowledge here that the ALJ did find her fairly limited and, as I said, assessed a highly restrictive functional residual capacity. The Social Security Act sets a stringent standard for disability. It requires complete disability for no fewer than 12 months. So while her depression symptoms did fluctuate at times,  to the point of disability within the meaning of the Act. Now, under the substantial evidence standard, once again, Ms. Grotz must show that the ALJ's findings were entirely outside the realm of reasonableness. The fact that a different ALJ could have reached different conclusions based on this record is alone not enough to show error. At the end of the day, her arguments amount to a request that this Court re-weigh the evidence in her favor, which it will not do. So if the Court has no further questions, I would ask that you affirm the ALJ's finding that Ms. Grotz was not disabled during the closed period at issue. Thank you. Thank you, Ms. Godfrey. Anything further, Mr. Sutterfield? It's our position we did not waive with respect to Barron's all-inclusive statement with regard to the opinions that I think would encompass that. Nurse Barron, as noted, did not even have the correct medications for her to have opioid with regard to Ms. Grotz's capabilities and not even know what medication she's on is implausible. There's certainly no assessment. FAIR can certainly mean something for a particular person. Those assessments of FAIR were by the people who were treating and assessing her and noting GAF scores that are inconsistent with sustained work. So that in itself is insignificant on that basis for the ALJ's ruling. The lack of hospitalizations for someone with depression or anxiety would be if they're a danger to themselves or others. If that were the ongoing criteria for someone being disabled, then you're talking about only institutionalized people would be disabled because once they're discharged, oh, they're no longer in a hospital. I mean, that takes closer analysis than to simply say, well, they weren't hospitalized or didn't have to go to an emergency room because they weren't a threat to themselves or others. Bo did handle her kids. During the pendency of this, she was unable to get her own child back. You know, kids live with her. Would she be somebody you would want your kids to be with? I mean, there's a question about just because someone is doing something doesn't mean they're doing it in a way that would reflect their ability to work. The court has considered that. Taking care of one's kids does not equate to work. You can throw someone in the microwave and go sit down on the couch or go back to bed and lay down. That's not caring for a person. That's not equivalent to work time. I also note, again, every vocational expert indicated missing work minimally. If you fail, you know, missing one day a week, one day a month, would cause someone to lose employment. If someone were to fail to get 90% of the job done one day a week, they would be terminated. So we're talking about a threshold here that is clearly within the confines of the evidence. Additionally, giving no weight to the opinions of the treaters is completely inappropriate. If someone doesn't have extreme symptoms, it doesn't mean they don't have severe symptoms and it doesn't mean they don't have symptoms of such severity that they're consistent with the vocational expert's testimony about missing. You can't miss more than one work day a month. One vocational expert testified during the probationary period, no days a month. And, again, staying on task, which is her problem. Missing, you know, I don't want to repeat myself on that. Also, I will stop. I can't find my notes. Thank you very much. Thank you, Mr. Sutterfield. The case is taken under advisement and the court will be in recess.